**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **SHAUNA HURLES**<br>188 ½ Washington Street<br>Tiffin, Ohio 44883 | ) <br> ) | Case No. <br><br> Judge |
| and | ) | |
| **ALEX TOZZIE**<br>25A S. Washington Street<br>Tiffin, OH 44883 | ) <br><br> ) | <u>**COMPLAINT, WITH JURY DEMAND**</u><br><u>**ENDORSED HEREON**</u> |
| Plaintiffs, | ) <br><br> ) | Joseph F. Albrechta (0008478)<br>Christopher E. Liebold (100602) |
| **vs.** | ) | ALBRECHTA & COBLE, LTD.<br>2228 Hayes Avenue, Suite A<br>Fremont, Ohio 43420 |
| **TIFFIN UNIVERSITY, an Ohio Not-for-**<br>**Profit Corporation,**<br>155 Miami Street<br>Tiffin, Ohio 44883, | ) <br><br> ) <br><br> ) | (419)332-9999 – Telephone<br>(419)333-8147 – Facsimile<br>jalbrechta@lawyer-ac.com<br>cliebold@lawyer-ac.com<br>kwitte@lawyer-ac.com |
| Defendant. | ) <br><br> ) <br><br> ) | David T. Albrechta (48431)<br>Eleni K. Albrechta (48429)<br>Albrechta & Albrechta, LLC.<br>530 Main Avenue, Suite D3<br>Durango, CO 81301<br>(970) 422-3288 – Telephone / Fax<br>David@AlbrechtaLaw.com<br>Eleni@AlbrechtaLaw.com |
| | ) <br><br> ) <br><br> ) | Tod J. Thompson (0076446)<br>810 Sycamore Street, Floor Three<br>Cincinnati, Ohio 45202<br>(513) 322-4348– Telephone<br>(513) 263-9001– Facsimile<br>tod@tthompsonlaw.com |
| | ) | Counsel for Plaintiffs |

Now come Plaintiffs, Shauna Hurles and Alex Tozzie ("Plaintiffs" or individually "Coach Hurles" or "Coach Tozzie"), by and through counsel, hereby state as follows for their Complaint against Defendant TIFFIN UNIVERSITY, an Ohio not-for-profit corporation ("Defendant" or "the University"):

1. Plaintiffs have been denied rights guaranteed to them by federal and state law. Because of the acts and omissions of the Defendant as alleged herein, Plaintiffs were discriminated against based upon equal pay and such discrimination was in violation of The Equal Pay Act of 1963, Title IX of the Educational Amendments of 1972, as thereafter amended, and corresponding Ohio state law as well as ancillary state contract claims under Ohio state law, arising from the same set of operative facts as the federal claims.

## PARTIES

2. Defendant is a not-for-profit corporation organized under the laws of Ohio.

3. Defendant has a single location in Tiffin, Seneca County, Ohio, conducts business in Seneca County, Ohio, regularly conducts substantial business within the territory comprising the Northern District Ohio, maintains its principal place of business in Tiffin, Seneca County, Ohio, and employs more than fifty (50) persons. Defendant is an "employer" under the federal and state laws applicable to Plaintiff's claims.

4. Shauna Hurles ("Coach Hurles" or "Plaintiff") is a female who worked for Defendant as the University's Head Volleyball Coach. Plaintiff is a covered "employee" under the federal and state laws applicable to Plaintiff's claims.

5. Alex Tozzie ("Tozzie" or "Plaintiff") is a female who worked for Defendant as the University's Assistant Volleyball Coach.  Plaintiff is a covered "employee" under the federal and state laws applicable to Plaintiff's claims.

6. Defendant employs more than fifty (50) employees and has had twenty (20) or more employees always working twenty (20) or more weeks annually during times relevant to this Complaint.

## JURISDICTION AND VENUE

7. This Court has jurisdiction to hear Plaintiffs' Complaint pursuant to 28 U.S.C. §§ 1331 and 1367, as this case involves federal questions and Plaintiffs' state law claims are so related to Plaintiffs' federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

8. Venue is proper in this Division and District pursuant to 28 U.S.C. § 1391, because Defendant is a resident of this Division and District and regularly conducts business is this Division and District.

## FACTS

## SHAUNA HURLES

9. Shauna Hurles is a female.

10. Shauna Hurles first worked for Defendant as an Assistant Volleyball Coach in January of 2015.

11. Coach Hurles was then named Interim Head Volleyball Coach in December of 2016, and remained Interim Coach until she was named the official Head Coach for Volleyball on March 1, 2017.

12. Coach Hurles was the Head Coach of the Volleyball program until June 6, 2023, when it was announced by the University that Coach Hurles would not be continuing as Head Coach.

13. The Tiffin University Volleyball Program is a Division II Volleyball Program.

14. As part of duties and responsibilities as the Head Coach of the Volleyball program, Coach Hurles was in charge of and responsible for:

    a.   Recruiting new players to the team and university;

    b.   Maintaining a roster of at least Twenty-one (21) players;

    c.   Being the primary fundraiser for the program;

    d.   Conducting alumni outreach for the University;

    e.   Limiting her conduct on social media;

    f.   Protecting and maintaining the University's reputation.

15. Coach Hurles was a successful coach, with a winning record of 96 - 70 during her Six (6) seasons as the Head Volleyball Coach.  Coach Hurles ranks second in career victories in Volleyball at Tiffin University.

16. The two (2) previous head coaches include TJ Shouse, who finished with a record of 64 - 83 from 2006 to 2009, and Dana Cordova, who finished with 87 career wins from 2010 to 2016.

17. In her first year as the Tiffin University Head Volleyball Coach in 2017, Coach Hurles led her team to a Twenty (20) win season, the first time for Tiffin University as a Division II program, and also led the program to its first appearance in the conference tournament as a Division II program.

18. In 2018, Coach Hurles followed the previous season's performance to Tiffin University's best performance in Volleyball since the 2006 Season.  The team finished with a record of 21 - 11 Overall, and a 15 - 4 record in their first season in the Great Midwest Athletic Conference (GMAC).  The 2018 season also included an eleven (11) game winning streak that tied the school record for longest winning streak.

19. In 2019, Coach Hurles led the program to its first appearance in the Conference Final Championship Game, as well as the first time in program history to host the first round of the conference tournament.  In 2019, the program also had its first ever All-American Player.

20. In 2020, Coach Hurles again led the program to the Conference Tournament Final, despite having to play the season in the spring due to the COVID-19 Pandemic that led to an abbreviated season.

21. Coach Hurles then led her team to a GMAC Final Four Appearance in 2022.

22. In Coach Hurles' six (6) seasons as a Head Coach for the Tiffin University Volleyball Team, she either led the team to its highest win totals in program history or finished with strong postseason performances in the conference tournament.

23. During her time as Tiffin University Head Volleyball Coach, eighteen (18) players have been named to All-Conference teams, including multiple players being named to all-region teams through the American Volleyball Coaches Association (AVCA) and Division II Conference Commissioners Association (D2CCA).  During her time as Head Coach, five (5) players were named Academic All-District through College Sports Communication (CSC) and one (1) player was named Academic All-American through CoSIDA.

**ALEX TOZZIE**

24. Alex Tozzie is an African American female.

25. Alex Tozzie was a volleyball player for Tiffin University, where she served as a Captain for three (3) years and was named to the Academic All-Conference Team.

26. On the recommendation of Coach Hurles, Alex Tozzie was hired as an Assistant Volleyball Coach in August of 2021.

27. As an Assistant Coach, Tozzie was responsible for:

    a.   Coordinating recruiting efforts;

    b.   Managing practices and other team events;

    c.   Social Media content;

    d.   Alumni reach out and fundraising efforts.

## FACTS – EQUAL PAY

28. According to the United States Department of Education, Equity in Athletics Data Analysis, the Average Annual Institutional Salary per Head Coach for Men's teams at Tiffin University is Fifty-two Thousand Five Hundred and Seventy-four Dollars ($52,574.00), versus Forty-two Thousand and Twelve Dollars ($42,012.00) per Head Coach for Women's Teams.

29. The Average Institutional Salary for Assistant coaches of Men's teams is Thirty-seven Thousand Three Hundred and Fifty-three ($37,353.00) vs. Twenty-eight Thousand Two Hundred and Fifty-nine Dollars ($28,259.00) for Assistant coaches of Women's teams.

30. Both Hurles and Tozzie received lower salaries than their male counterparts as Head and Assistant coaches in comparison to programs with similar number of participants.

31. Coach Hurles' job as a Head Coach of the Women's Volleyball team is substantially equal to the jobs of the male Head Coaches at Tiffin University.

32. Coach Tozzie's job as an Assistant Coach of the Women's Volleyball team is substantially equal to the jobs of male Assistant Coaches for other programs at Tiffin University.

33. Tiffin University required Coach Hurles and Coach Tozzie to put in the same amount of work and effort as their male counterparts yet were paid less and provided less resources.

34. Based on the university's non-discrimination in employment policies,[1] Tiffin University's working conditions were supposed to be similar for all coaches regardless of gender.

35. Because of the higher expectations placed on female coaches of female athletes, Coach Hurles and Coach Tozzie were provided fewer resources than their similarly situated male counterparts for things such as budget, recruiting and support staff, despite being paid less.

36. According to the Tiffin University Non-Discrimination Policy, Tiffin University "Tiffin University has developed the policies and procedures which prohibit discrimination, sexual harassment/misconduct, and retaliation on the basis of sex."

37. According to Tiffin University's 2022-23 Equal Opportunity Harassment & Non-Discrimination Policy & Procedures, "Tiffin University has developed internal policies and procedures that will provide a prompt, fair, and impartial process for those involved in an allegation of discrimination or harassment on the basis of protected class status". However, Tiffin University has at this point refused to investigate or remedy the claims of Plaintiffs for wage discrimination and unequal pay.

**TITLE IX**

38. Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 *et seq.* (1982), which prohibits sex discrimination in educational programs and activities receiving federal financial assistance, applies to claims of sex discrimination and employment.

39. Title IX applies to the employment of coaches, administrators, and academics, and states "No person in the United States shall, on the basis of sex, be excluded from participation

---

[1] *See* https://www.tiffin.edu/about/office-for-equity-access-opportunity/#:~:text=Tiffin%20University%20is%20committed%20to,political%20affiliation%2C%20social%2Deconomic%20class.

in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal Financial assistance." 20 U.S.C. § 1681.

40. Federal Title IX regulations specific to employees were promulgated by Congress. *See* 34 C.F.R. part 106, Subpart E; *see also N. Haven Bd. Of Ed. v. Bell*, 456 U.S. 512, 512 (1982) ("subpart E regulations promulgated in connection with Title IX are valid").

41. The U.S. Department of Education also adopted guidance interpreting Title IX to cover and protect employees of educational institutions. Title IX Resource Guide, available at https://www2.ed.gov/about/offices/list/ocr/docs/dcl-title-ix-coordinators-guide-201504.pdf.

42. Title IX's legislative history makes clear that Title IX's gender discrimination prohibition applies to the employment of coaches, administrators and academics. Lynda Guild Simpson, *Sex Discrimination in Employment under Title IX*, 48 U. Chi. L. Rev. 462, 469-69 (1981); *see also* 14 C.F.R. § 1253.500(a) ("No person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjective to discrimination in employment, or recruitment, consideration, or selection therefor, whether full-time or part-time, under any education program or activity operated by a recipient that receives Federal financial assistance.").

43. Title IX regulations make clear that Title IX's gender discrimination prohibition applies to Defendant's employment decisions, including, but not limited to, decisions regarding hiring, promotion, consideration for and award of tenure, demotion, rate of pay or any other form of compensation, and changes in compensation. 14 C.F.R. § 1253.500(b)(1)-(10).

44. Defendant publicly acknowledges that Title IX protects its employees as its website makes clear that Title IX applies to both areas of education *and employment*. See 2022-2023

Tiffin University Equal Opportunity & Non-Discrimination Policy & Procedures ("The core purpose of this policy is the prohibition of all forms of discrimination, harassment, and retaliation. Sometimes, discrimination involves exclusion from activities, such as admission, athletics, or *employment advancement*").[2] (emphasis added).

## TERMINATION

45. In 2017, Coach Hurles' first season as the Head Coach, players that were members of the Volleyball program were sent anonymous surveys to evaluate her performance in coaching. This process was managed by the Athletic Department of Tiffin University, specifically Lonny Allen (Athletic Director) and Kelly Daniel (Senior Women's Administrator).

46. Coach Hurles was to meet with the Athletic Department administration to review responses to the anonymous surveys and discuss what was contained within them.

47. After the 2017 season, a new evaluation system was implemented by the Athletic Department of Tiffin University by Lonny Allen and Kelly Daniel.

48. The Athletic Department sent out a ten (10) to fifteen (15) question questionnaire to evaluate coaches.  The questionnaire was discussed with all coaches on staff.  This end of season evaluation was the new standard at the University and occurred at the end of each season.

49. During their employment, Coach Hurles and Coach Tozzie received a strong number of supportive and positive responses to the questionnaires, as well as end of season meetings with players.

---

[2] *See* https://www.tiffin.edu/about/title-ix/#:~:text=%E2%80%94Title%20IX%20of%20the%20Education,%2For%20sexual%20harassment%2Fmisconduct.

50. An exit interview process had been recently implemented in December of 2022 for any student that was leaving the University Volleyball Team.  This process was conducted by a retention team, which included as a member Missy Weigner, who was an Associate Provost and mother to a member of the Volleyball team that did not play much.

51. In December of 2022, an exit interview was completed with a player from the Junior Varsity (JV) roster after that player decided to leave the Volleyball program and University.

52. For reasons that remain unclear, this exit interview process for the departing JV volleyball player was pushed through to the President (Dr. Lillian Schumacher) and Provost of Tiffin University (Dr. Peter J. Holdbrook).  A process specific to the Volleyball program.

53. This player was able to speak with the University President and Provost during the exit interview process, with the direct report of Plaintiffs, Lonny Allen, Director of Athletics (AD Allen), not being notified until after the fact.

54. After AD Allen was notified of this meeting between the JV player and University Administration, he informed Coach Hurles that she would be called into a meeting with Human Resources (HR).

55. Coach Hurles was required to meet with HR while AD Allen was unavailable at the NCAA Football Championships and was not provided with any support or advocates on her behalf.

56. During her meeting with HR, Coach Hurles was informed of claims being made against her by the JV player.  The allegations referenced by the JV player were either entirely false or purposefully taken out of context in order to harm the reputation of Coach Hurles.

57. Later, she was informed by the Vice President of Human Resources, Nadia Lewis, that she was going to recommend that this investigation go no further and that everything should be fine.

58. After the meeting with the HR department, Plaintiffs continued to prepare for the upcoming Volleyball season and concluded with a productive and encouraging spring practice period.

59. At no point during the spring practice period was there any indication that the players were unhappy with the program or with the coaching of either Plaintiff.  In fact, players had made statements regarding how positive and helpful both Plaintiffs had been.

60. In April 2023 Coach Hurles was offered and signed a new Contract for a two-year term.

61. The April 2023 contract, attached hereto and incorporated herein by reference as Exhibit A, was signed by the President of Tiffin University.

62. Post-season evaluation forms were sent to current players on April 7, 2023.

63. This process was specific to coach Hurles, her staff, and the Volleyball program, and was not undertaken for any male coached sports program at the University.

64. Coach Hurles was informed that there had not been enough responses to the first evaluation, so it was now being sent out to all players who counted for the Volleyball program, which was up to forty (40) players.

65. The second set of evaluations were sent out on April 15, 2023, to which twenty (20) responses were received.

66. This process was specific to coach Hurles, her staff, and the Volleyball program, and was not undertaken for any male coached sports programs at the University.

67. Out of the forty (40) persons who were provided with evaluation forms, only seventeen (17) were players were with the program that spring.  Evaluation forms were also sent to

players who had not played with the program for the last two (2) to three (3) years.  These players would not have been able to evaluate and understand the growth and development of both Plaintiffs as coaches during this time.

68. Neither AD Allen nor Kelly Daniel had been previously provided with complaints with regards to the Plaintiffs, as would have been standard practice regarding complaints against athletic coaches.

69. This evaluation process did not involve AD Lonny Allen nor Kelly Daniel.  This evaluation process was not implemented as it relates to male coaches.

70. On May 1, 2023, Coach Hurles was informed by AD Allen that she was under further investigation from the University.

71. On May 12, 2023, Coach Hurles met with the HR department.

72. Coach Hurles pushed for information regarding the allegations made against her, as she was not being provided with relevant information.  Additionally, Coach Hurles pushed for an improvement plan for the fall season.

73. Following the meeting, Coach Hurles continued with her Head Coach responsibilities.

74. In May of 2023, Coach Tozzie has multiple meetings with Sherri Thompson, a Director of Human Resources at Tiffin University, about the Volleyball program and overall health of the culture.  Never once during these meetings was Coach Hurles told that she was under investigation or was she was informed of any issues related to her status as an employee or coach of the Volleyball program.

75. Coach Tozzie also completed a professional development series required by the University, after which she was required to give a presentation.

76. Coach Hurles was specifically informed by Sherri Thompson that Nadia Lewis (VP of HR) had nothing but great things to say about her and how wonderful she was.

77. On May 31, 2023, Lonny Allen resigned as the Athletic Director.

78. On either June 2 or 3 of 2023, Coach Hurles and Tozzie received an email scheduling a meeting with HR on June 5, 2023.

79. During that meeting Coach Hurles was informed that she was being let go as "the findings of my evaluations" indicated she was "not a good fit". Coach Hurles was informed that she was to receive no severance and that she was no longer an employee of the University, despite the fact that she recently signed a new contract, contrary to the terms of the contract.

80. Sherri Thompson, Director of Human Resources, was present at this meeting and continuously apologized to Coach Hurles for the unexpected nature of these events.

81. Later, on June 5, 2023, after their meeting with Coach Hurles, Coach Tozzie was informed that she was also being terminated from her employment effective immediately.

82. After the meeting of June 5, 2023, Coach Tozzie formally requested her personnel file from the University, in writing via email. She received no response from the University.

83. On June 6, 2023, Coach Hurles formally requested her personnel file from the University, in writing via email. She received no response from the University.

84. On June 8, 2023, both Plaintiffs visited the HR department in person to request their personnel files and were denied access to them, as they are described as property to the University. Plaintiffs can only conclude that they received less pay on the basis of their gender in violation of Title IX.

## COUNT I – VIOLATION OF TITLE IX, 20 U.S.C. § 1681

### GENDER DISCRIMINATION IN EDUCATION
### IMPACT OF EQUITY IMBALANCES ON EQUAL WORK AND UNEQUAL PAY

85. Plaintiffs reallege all previous paragraphs as if fully set forth herein.

86. Title IX prohibits policies and practices that permit employers from paying employees differently on the basis of gender.

87. Plaintiffs suffered an adverse employment action when Defendant failed to pay them equally to their male counterparts and forced Plaintiffs to undergo evaluation processes different than their male counterparts.

88. Tiffin University has provided and continues to provide unequal support for women's programs and or has not achieved full equality for men's and women's sports and their evaluative processes. As such, Tiffin University cannot rest pay decisions based on any factor impacted by a failure to comply with Title IX, either at Tiffin University or by relying on factors that exist at other universities also not in full compliance with Title IX.

89. As a proximate cause of Defendant's actions, Plaintiffs have in the past and will in the future suffer mental and emotional harm, anguish, humiliation, embarrassment, loss of dignity, physical harm, lost wages and benefits, and lost earning capacity.

90. Defendant's actions were willful and warrant the imposition of punitive damages.

91. Plaintiffs demand judgment against Defendant in an amount that will fairly compensate them for lost wages, front pay and future wages, emotional distress, court costs, with interest as provided by law, and such other relief as the Court deems appropriate.

## COUNT II – PLAINTIFF HURLES BREACH OF CONTRACT

92. Plaintiffs reallege all previous paragraphs as if fully set forth herein.

93. Plaintiff Hurles entered into an employment contract for the purposes of employment as Head Coach for the Tiffin University Volleyball Program.

94. The term of the contract was April 1, 2023 until February 28, 2025.

95. Defendant is a not-for-profit educational institution, located in Tiffin, Ohio.

96. Defendant also operates an Athletic Department and hires employees to act as coaches and support staff for the associated athletic programs.

97. Defendant breached the employment contract of Coach Hurles when it terminated her employment contract without cause *See* <u>Exhibit A</u>.

98. Defendant fabricated a basis for termination of Plaintiffs that included, among other things, pursuit of a personal vendetta against to coaches from a member of the University administration because of lack of playing time of a specific player.

99. Coach Hurles was terminated from her employment contract "WITHOUT CAUSE".

100. Under the employment contract between Plaintiff Hurles and Defendant, **Article V - Termination of Agreement, A. TERMINATION BY TIFFIN, 1. WITH CAUSE**, Tiffin University only has the right to terminate the employment contract of Plaintiff Hurles with "Just Cause" if:

a. There is a material or serious violation of, or unwillingness to perform the duties in good faith set forth in the employment contract;

b. Contact by the Head Coach which constitutes moral turpitude or would bring public disrespect, contempt, ridicule upon Tiffin University, or failure to follow the high ethical and moral standards of Tiffin University;

c. Poor performance as Head Coach;

15

    d.  Situations where Tiffin University determines that in the best interests of Tiffin and the Volleyball program require that the coach no longer be retained;

    e.  Head Coach is charged with or convicted of a felony;

    f.  Due to Head Coach's disability or death;

    g.  A deliberate or serious violation of any rule, regulation of the athletic conference or NCAA which reflects adversely upon Tiffin University;

    h.  A violation of any state or federal law or regulation or rule or regulation or policy of Tiffin, the president of the university, and the Board of Trustees;

    i.  Any other cause adequate to sustain the termination of any other Tiffin University employee of the same classification as a Head Coach;

    j.  Prolonged absence without consent;

    k.  Failure to positively represent Tiffin University in public and private settings; and,

    l.  Discontinuation of the Volleyball program.

101.  It is clear that Defendant, through its conduct, terminated Coach Hurles' employment "Without Cause":

    a.  There are no "Material" or "Serious Allegations" of her duties as Head Coach;

    b.  There is no conduct on the part of Coach Hurles which would constitute "moral turpitude";

    c.  The performance of the Volleyball program has been exceptional and involved the best seasons in program history;

    d.  Coach Hurles has not been charged or convicted with a Felony;

    e.  Coach Hurles has not suffered a death or disability;

f.   Coach Hurles has not made a deliberate or serious violation of the rules and regulations and bylaws of the G-MAC or NCAA;

g.   Coach Hurles has not violated State or Federal Law or regulation or rule or policy of Tiffin University;

h.   Coach Hurles has not had a period of prolonged absence with the consent of the University;

i.   Coach Hurles has positively represented Tiffin University and its athletic programs in public and private; and,

j.   The Volleyball program has not been discontinued.

102. As such, there is no basis for Defendant to claim that Plaintiff Hurles was fired  from her employment contract "With Cause".

103. Under the employment contract, Article V – TERMINATION OF AGREEEMENT, A. TERMINATION BY TIFFIN, 2.  WITHOUT CAUSE, when Tiffin University cancels the Head Coach's contract prior to expiration of the term, Coach Hurles is entitled to the balance of her salary as a head coach.

104. As a proximate and direct result of Plaintiff's termination by Defendant, Plaintiff Hurles has been caused to suffer mental and physical embarrassment and anguish over the circumstances of the termination, has been harmed reputationally amongst the coaching and Volleyball profession, lost out on future wages and future employment opportunities with other institutions.

**COUNT III – PLAINTIFF TOZZIE THIRD PARTY BENEFICIARY CLAIM**

105.  Plaintiffs reallege all previous paragraphs as if fully set forth herein.

106.  Plaintiff Tozzie was an assistant coach hired by Coach Hurles.

107. Coach Hurles had authority to hire assistant coaches under Article II – DUTIES AND

RESPONSIBILITIES:

> B.    HEAD COACH shall have the responsibility for the planning, supervision, and coordination of all aspects of the VOLLEYBALL program, including, but not limited to:
>
> > 6.    Hire and discharge assistant coaches and other employees under HEAD COACH's direct supervision, in accordance with TIFFIN personnel policies and procedures, NCAA regulations, and subject to the approval of the Vice President of Intercollegiate Athletics.

108. Under Coach Hurles' authority to hire assistant coaches, Plaintiff Tozzie was hired as an

assistant coach for the 2021 Volleyball season.

109. Throughout her term as assistant coach, Plaintiff Tozzie received nothing but positive

feedback from administration in the athletic department on her performance.

110. On June 5, 2023, when Coach Tozzie was terminated by the University, she was not

provided with a basis for her termination other than that "it's not a good fit".

111. Coach Tozzie, hired to the staff by Coach Hurles, did not have a signed employment

contract with Defendant Tiffin University.

112. Coach Tozzie was a third-party beneficiary to the employment contract between Plaintiff

Hurles and Defendant Tiffin University.

113. There existed an employment contract between Plaintiff Hurles and Defendant, which

provided Coach Hurles with the above stated authority to hire assistant coaches such as

Coach Tozzie.

114. There is clearly expressed intent through the provisions of the contract that the clause

allowing for the hiring of assistant coaches is for the direct and primary benefit of the

assistant coaches.

115. There was a clear breach of the employment contract by Defendant Tiffin University when it terminated the employment contract of Plaintiff Hurles, "Without Cause", resulting in Plaintiff Tozzie being terminated by Defendant the same day, minutes after Plaintiff Hurles was also terminated.

116. Plaintiff Tozzie expected, as a part of the power vested to Coach Hurles as the Head Volleyball Coach by Defendant, that she would continue her employment as an Assistant Coach.

117. Coach Tozzie has been harmed by this breach of contract by losing her employment, losing future earnings, benefits, and suffering significant stress and embarrassment.

118. As a proximate and direct result of Plaintiff's being terminated from their employment by Defendant, Plaintiff Tozzie has been caused to suffer mental and physical embarrassment and anguish, has been harmed reputationally amongst the coaching and Volleyball profession, lost out on future wages and future employment opportunities with other institutions.

## PRAYER FOR RELIEF

**WHEREFORE,** the plaintiff prays this honorable Court:

I.     Federal Law Claims:

    A.  Declare the acts and practices complained of herein by Defendant Tiffin University have violated Title IX of the Educational Amendments of 1972;

    B.  Injunctive relief enjoining and restraining Defendant from further interfering with the rights of the Plaintiffs and others as set forth herein;

    C.  Award compensation of the loss of all the income, benefits, and privileges incurred since the termination of Plaintiffs from their employment;

    D.  Award backpay;

    E.  Award frontpay;

    F.  Reinstate Plaintiffs to employment with full benefits and seniority, effective June 5, 2023;

    G.  Award Plaintiffs liquated damages;

    H.  Award Plaintiffs other compensatory damages as permitted by law;

    I.  Award Plaintiffs punitive damages;

    J.  Award Plaintiffs pre-judgment and post-judgment interest;

    K.  Award Plaintiffs' attorneys' fees;

    L.  Award Plaintiffs' the costs of this action; and

    M.  Award Plaintiffs any such further relief the Court deems lawful, just, or equitable.

II.     State Law Claims:

    A.  Declare the acts and practices complained of herein by Defendant Tiffin University to have breached the employment contract of Plaintiffs' with Tiffin University;

    B.  Restore Plaintiffs to their employment with Defendant, effective June 5, 2023;

    C.  Award Plaintiffs backpay;

    D.  Award Plaintiffs frontpay;

    E.  Award Plaintiffs compensatory damages;

    F.  Award Plaintiffs pre-judgement and post-judgment interest;

    G.  Award Plaintiffs' attorneys' fees;

    H.  Award Plaintiffs' costs of this action;

    I.  Award any such further relief the Court deems, lawful, just, or equitable.

Plaintiff further requests any further relief the Court deems just or equitable.

Respectfully submitted,

*/s/ Joseph F. Albrechta*
Joseph F. Albrechta
Christopher E. Liebold
ALBRECHTA & COBLE, LTD.

Counsel for Plaintiffs

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all matters so triable.


*/s/ Joseph F. Albrechta*
Counsel for Plaintiffs