# TIFFIN UNIVERSITY

## HEAD VOLLEYBALL COACH CONTRACT

This Agreement ("Agreement") is made between Tiffin University, 155 Miami Street, Tiffin, Ohio 44883 ("TIFFIN") and SHAUNA HURLES ("HEAD COACH"), together, the "Parties," and sometimes singularly, the "Party." The Parties recognize and agree that this Agreement shall, at all times, be subject to the Constitution and Bylaws of the National Collegiate Athletic Association ("NCAA"), as amended from time to time, which are incorporated by reference into the terms of this Agreement. HEAD COACH's employment relationship shall be controlled only by this document, applicable TIFFIN policies and procedures, and the Constitution and Bylaws of the NCAA, as amended from time to time.

### WITNESSETH

WHEREAS, TIFFIN is in need of the services of an athletic coach for TIFFIN's VOLLEYBALL team;

WHEREAS, HEAD COACH represents that he/she meets TIFFIN'S qualifications for the position and is available for employment in this capacity by TIFFIN;

NOW, THEREFORE, for and in consideration of the mutual promises to each other, as hereinafter set forth, the Parties hereto do mutually agree as follows:

### ARTICLE I
### TERMS AND CONDITIONS

**A. EMPLOYMENT**

1. Subject to the conditions stated in this Agreement, TIFFIN employs HEAD COACH as HEAD COACH of the VOLLEYBALL team at TIFFIN, and HEAD COACH agrees to and accepts the terms and conditions of employment outlined in this Agreement.

2. HEAD COACH shall work under the immediate supervision of the Vice President of Intercollegiate Athletics.

**B. APPOINTMENT**

1. HEAD COACH is being appointed for a two (2) year term commencing on April 1, 2023 and terminating on February 28, 2025, without further notice to HEAD COACH, subject to the policies and procedures of TIFFIN and the conditions stated herein, unless extended or sooner terminated as hereinafter provided in this Agreement.

2. **Compensation.** The University will pay you a starting salary at the rate of $43,700.00 per year, payable in accordance with the University's standard payroll schedule, beginning April 1, 2023 and you will receive your first pay on April 15, 2023. This salary will be subject to applicable payroll taxes, benefits, etc.

3. **Hours and Employment Classification.** This is a full-time exempt position.

4. **Employee Benefits.** In this role, you will be eligible to participate in a number of University-sponsored benefits. In addition, you will be entitled to paid annual leave and sick time in accordance with the University's policy.

5. The Vice President of Intercollegiate Athletics or designee shall meet with HEAD COACH annually for the purpose of evaluating HEAD COACH's performance of duties and responsibilities pursuant to this Contract. Based upon such performance evaluation(s), the Vice President of Intercollegiate Athletics may at his discretion, and with the approval of the President of TIFFIN, offer to HEAD COACH an extension or renewal of this Agreement. Any such extension or renewal of this Agreement shall be reduced to writing and duly executed by TIFFIN and HEAD COACH.

6. The HEAD COACH accepts employment in this position and agrees to faithfully and diligently perform the duties of HEAD COACH, as set forth herein. If, during the term of this Agreement, TIFFIN's VOLLEYBALL program ceases to be a member of the Great Midwest Athletic Conference ("G-MAC"), the Parties will discuss the extension, termination, and/or revision of this Agreement.

7. At the expiration of the term of this Agreement, both parties agree that the HEAD COACH's employment with TIFFIN shall terminate, and that there are no understandings or obligations to continue that employment. HEAD COACH's employment shall continue after the Term of this Agreement only if there is a fully executed amendment to this Agreement.

**ARTICLE II**
**DUTIES AND RESPONSIBILITIES**

*Failure to comply with the provisions contained in Article II shall be deemed a violation of this Agreement and may, at the option of Tiffin, be grounds for disciplinary action up to and including dismissal which will result in termination of this Agreement.*

A. HEAD COACH is hereby employed by TIFFIN as the HEAD VOLLEYBALL COACH. HEAD COACH assumes full responsibility for the academic performance of student-athletes participating in TIFFIN's VOLLEYBALL program. HEAD COACH shall adhere to and follow the academic standards and requirements of TIFFIN in regard to the recruiting and eligibility of prospective and current student-athletes. Additionally, HEAD COACH will work to ensure high levels of retention of student-athletes in the VOLLEYBALL program.

HEAD COACH shall undertake all appropriate and feasible academic efforts to assist each student athlete in his/her pursuit of a defined degree program. HEAD COACH shall use his/her best efforts to ensure that each student-athlete progresses satisfactorily in his/her respective academic program.

B.  HEAD COACH shall have the responsibility for the planning, supervision, and coordination of all aspects of the VOLLEYBALL program, including, but not limited to:

1. Perform all VOLLEYBALL duties in a manner consistent with TIFFIN rules and regulations, federal and state statutes and regulations, conference rules and regulations, NCAA rules and regulations, and within the traditional high standards associated with the VOLLEYBALL profession.

2. Conduct himself/herself and the VOLLEYBALL program at TIFFIN in accordance with the constitution and bylaws of the conference in which TIFFIN competes in VOLLEYBALL, in accordance with the Constitution and Bylaws of the NCAA, all state and federal laws, and all applicable TIFFIN policies and procedures.

3. Recruit, coach, and train student-athletes to compete successfully against other college teams in a quality VOLLEYBALL program.

4. Work in cooperation with TIFFIN's faculty and administration to ensure that all student-athletes' academic requirements are met.

5. Use best efforts to ensure that student-athletes in the VOLLEYBALL program conduct themselves in a sportsmanlike manner and in other ways that will result in a positive image for TIFFIN, both on and off the playing arena.

6. Hire and discharge assistant coaches and any other employees under HEAD COACH's direct supervision, in accordance with TIFFIN personnel policies and procedures, NCAA regulations, and subject to the approval of the Vice President of Intercollegiate Athletics.

7. Directly supervise the VOLLEYBALL program's coaching staff, interns, and other supporting staff to ensure compliance with all applicable rules and regulations of the NCAA, the G-MAC, and TIFFIN, as well as all applicable federal and state laws.

8. Maintain a minimum squad set forth by TIFFIN's President and/or Vice President of Intercollegiate Athletics.

9. Maintain and enforce all disciplinary and drug policies of TIFFIN and its Department of Athletics.

10. Perform such duties reasonably assigned from time-to-time by the President of TIFFIN or the Vice President of Intercollegiate Athletics.

11. Maintain a mature and responsible demeanor, both on and off campus, as well as on social media.

12. Use best efforts to develop and maintain a successful VOLLEYBALL program that attracts spectator interest and attendance, receives public support through donations and endowments, garners positive media attention, and generates revenue for TIFFIN's Department of Athletics. This responsibility includes making public appearances, speaking on behalf of the VOLLEYBALL program, speaking with the media, and assisting in the promotion of ticket sales for TIFFIN's VOLLEYBALL games.

C. HEAD COACH shall comply with all applicable laws, policies, rules and regulations of TIFFIN, the NCAA, the State of Ohio, and the United States of America, as now constituted or as they may be amended during the term hereof, including in connection with recruiting and eligibility of prospective and current student-athletes. In the event HEAD COACH becomes aware, or has reasonable cause to believe, that a violation of applicable laws, policies, rules, or regulations may have occurred, HEAD COACH shall immediately report such violation(s) to the Vice President of Intercollegiate Athletics.

D. HEAD COACH will perform his/her head coaching duties stated herein and as assigned by the Vice President of Intercollegiate Athletics within the budget allocated.

E. HEAD COACH shall avoid any business or professional activities or pursuits that would prevent HEAD COACH from devoting his/her full-time efforts to the performance of the duties under this Agreement or that would embarrass TIFFIN or detract in any manner from the duties outlined herein.

F. HEAD COACH shall immediately report to the Vice President of Intercollegiate Athletics the receipt or acceptance of any monies, benefits, or gratuities from any person, corporation, booster club, alumni association, or other benefactor provided to HEAD COACH on behalf of the VOLLEYBALL program.

## ARTICLE III
## COMPENSATION

A. ANNUAL COMPENSATION. In consideration of HEAD COACH's annual salary listed above, and the further agreements and considerations hereinafter states, HEAD COACH agrees to perform the duties set forth herein. The annual salary outlined above shall be paid in twenty-four (24) equal bi-monthly installments in accordance with the policies of TIFFIN governing payment of salary to members of the all-year professional staff. The annual salary may, from time to time, at the discretion of TIFFIN, be adjusted upward without the necessity of a written amendment to this Agreement. Any and all pay increases are subject to Tiffin's budget approval process and are discretionary in nature.

B. SUPPLEMENTAL COMPENSATION. TIFFIN shall determine if the following bonus conditions have been satisfied which would be payable as one lump sum in addition to the base salary of the HEAD COACH by TIFFIN on one of the regular TIFFIN calendar pay periods for all full-time staff and administrators. TIFFIN shall not make contributions to the retirement plan

4

or any other pension plan based on the amount of the supplemental compensation. Supplemental compensation, if any, does not become a part of the HEAD COACH'S base salary.

    i.     $500.00 bonus if HEAD COACH is named G-MAC Coach of the Year (or any other Conference for which TIFFIN is a member)
    ii.     $1,000.00 bonus if the TIFFIN VOLLEYBALL team receives a postseason invitation for the NCAA VOLLEYBALL tournament.
    iii.     $1,500.00 bonus if HEAD COACH is selected as the NCAA Division II National Coach of the Year.
    iv.     $1,000.00 bonus for each game the VOLLEYBALL program wins each season in the NCAA championship tournament.
    v.     $1,000.00 bonus if the VOLLEYBALL program wins the G-MAC regular season VOLLEYBALL championship. This additional payment will be provided within ninety (90) days from the conclusion of the championship in which the HEAD COACH achieves the bonus stipulations.
    vi.     $5,000.00 bonus if the VOLLEYBALL team wins the NCAA National Championship. This additional payment will be provided within ninety (90) days from the conclusion of the championship in which the HEAD COACH achieves the bonus stipulations.

## ARTICLE IV
## OUTSIDE ACTIVITIES

A.     No outside activities shall interfere with the full and satisfactory performance of HEAD COACH's duties under this Agreement.

B.     HEAD COACH is responsible for all aspects involved with the operation of VOLLEYBALL camps at TIFFIN, including obtaining all necessary releases from parents and youth for participation and maintaining complete financial responsibility for camp operations, including procurement of liability insurance coverage for the VOLLEYBALL camp activities in amounts determined sufficient by TIFFIN's Vice President for Finance & Administration. The Athletic Department shall provide HEAD COACH with the use of its athletic facilities free of charge, excluding all residential dormitories or other facilities, and all dining facilities.

C.     In accordance with TIFFIN policies and NCAA Bylaw 11.2.2, as amended from time to time, and incorporated herein by reference, HEAD COACH shall report annually to the Director of Compliance and/or Vice President of Intercollegiate Athletics all athletically-related income received by HEAD COACH from sources outside TIFFIN. Sources of such income include, but are not limited to: income from annuities or VOLLEYBALL camps, housing benefits, country club memberships, complimentary ticket sales, television and radio programs, and endorsement or consultation contracts with athletic shoe, apparel, or equipment manufacturers.

## ARTICLE V
## TERMINATION OF AGREEMENT

A.  **TERMINATION BY TIFFIN**

   1. **WITH CAUSE**

      a. TIFFIN has the right to terminate this Agreement for just cause. In addition to its meaning in TIFFIN policies related to employees, and its normally understood meaning in employment contracts, the term "just cause" shall be understood to include, but not limited to, any of the following:

         i. A material or serious violation of the duties set forth in this Agreement or refusal or unwillingness to perform such duties in good faith and to the best of HEAD COACH's abilities;

         ii. Any conduct of HEAD COACH that constitutes moral turpitude, or which would tend to bring public disrespect, contempt, or ridicule upon TIFFIN, or failure to follow the high moral and ethical standards commonly expected of HEAD COACH as a leading representative of the Department of Intercollegiate Athletics at TIFFIN;

         iii. Poor performance of the duties expressed herein by HEAD COACH – which includes, in part, an evaluation of the HEAD COACH's win/loss record at TIFFIN;

         iv. Situations in which TIFFIN determines that the best interest of TIFFIN and of its intercollegiate program require that the HEAD COACH no longer retain the position of HEAD COACH of the VOLLEYBALL program;

         v. HEAD COACH being charged and/or convicted of a felony;

         vi. HEAD COACH's disability or death. "Disability" shall mean physical or mental impairment of a nature which prevents the HEAD COACH, in the sole judgment of TIFFIN in consultation with appropriate medical personnel selected by TIFFIN, from performing his or her duties under this Agreement for a period of sixty (60) consecutive calendar days;

         vii. A deliberate or serious violation of any regulation, rule, constitutional provision or bylaw of the G-MAC, or the NCAA, which violation may, in the sole judgment of TIFFIN, reflect adversely upon TIFFIN or its athletic program, including any serious violation that could result in TIFFIN being placed on probation or punished by the G-MAC or the NCAA;

  viii. A violation of any state or federal law or regulation or rule or regulation or policy of TIFFIN, the President, and the Board of Trustees;

  ix. Any cause adequate to sustain the termination of any other TIFFIN employee of the HEAD COACH's classification;

  x. Prolonged absence from duty without TIFFIN consent;

  xi. Failure to positively represent TIFFIN and TIFFIN athletic programs in private and public forums; and

  xii. Discontinuation of the VOLLEYBALL team at TIFFIN.

b. In the event TIFFIN terminates this Agreement for just cause prior to the end of this Agreement, all obligations of TIFFIN to make future payments and/or to provide other consideration hereunder shall cease as of the date of such termination.

c. Any adverse personnel action shall be in accordance with the policies and procedures outlined in TIFFIN's formal personnel policies.

2. **WITHOUT CAUSE**

 a. In the event TIFFIN cancels HEAD COACH's appointment prior to the expiration of the prescribed term, without cause, TIFFIN's liability shall be limited to the balance of the salary HEAD COACH would have earned had HEAD COACH remained employed for the full term of the appointment less any salary actually earned by HEAD COACH in other employment during the balance of the term appointment canceled by TIFFIN. TIFFIN's obligation shall be paid on a monthly basis prorated over the balance of the term of this Agreement and shall be subject to HEAD COACH's duty to mitigate TIFFIN's obligation.

 b. Termination of this Agreement by TIFFIN may occur only by decision of the Vice President of Intercollegiate Athletics in consultation with the President or the President's designee.

B. **TERMINATION BY HEAD COACH**

1. Should HEAD COACH terminate this Agreement prior to its expiration, HEAD COACH shall pay TIFFIN 10% of yearly salary in liquidated damages within thirty (30) days of the effective date of termination, unless otherwise agreed upon by TIFFIN.

2. Should HEAD COACH terminate this Agreement prior to its expiration, HEAD COACH will provide written notice to TIFFIN at least thirty (30) days prior to termination.

7

C. **TERMINATION BY MUTUAL CONSENT**

This Agreement may be terminated at any time upon mutual agreement of both Parties.

D. **UNIVERSITY MATERIALS, EQUIPMENT AND DOCUMENTS**

All materials or articles of information, including without limitation, personnel records, recruiting records, team information, films, statistics or any other material or data furnished to HEAD COACH by TIFFIN, developed by HEAD COACH on behalf of TIFFIN, at TIFFIN's direction, for TIFFIN's use, or otherwise in connection with HEAD COACH's employment hereunder, are and shall remain, the sole property of TIFFIN. Within twenty-four (24) hours of the expiration of the term of this Agreement or its earlier termination as provided herein, HEAD COACH shall immediately cause any such materials in HEAD COACH's possession or control to be delivered to TIFFIN.

## ARTICLE VIII
## OTHER PROVISIONS

A. **ENTIRE AGREEMENT**

This Agreement and any documents incorporated specifically by reference represent the entire agreement between the Parties and suspend all prior oral or written statements or agreements.

B. **MODIFICATIONS**

This Agreement may be amended only by written amendments duly executed by TIFFIN and HEAD COACH.

C. **GOVERNING LAW; VENUE**

This Agreement is made under and shall be interpreted according to the laws of the State of Ohio, the courts of which shall be the form for any lawsuits arising from or incident to this Agreement.

D. **NOTICES**

Any notice required or permitted to be given under this Agreement shall be sufficient if in writing, and if sent by registered or certified mail to HEAD COACH's resident in the case of HEAD COACH, or to the Vice President of Intercollegiate Athletics' office in the case of TIFFIN, or if hand-delivered to either Party.

E. **BENEFIT**

8

The terms and conditions of this Agreement shall inure to the benefit of and be binding upon TIFFIN, its successors and assigns, and the HEAD COACH, the HEAD COACH's heirs, executors, administrators and legal representatives.

HEAD COACH agrees that he/she has read and fully understands the foregoing terms of this Agreement and that it is a reasonable and enforceable contract. HEAD COACH further agrees to abide by all of the provisions of the Agreement.

IN WITNESS WHEREOF, the Parties have executed this Agreement on this 12 day of April, 2023.

TIFFIN: Tiffin University
By: *Lillian Schumach*
*President*
Title

HEAD COACH: SHAUNA HURLES
*[signature]*
*Shauna Hurles*
Print Name